Milton M. LEVIN, Appellant,

v.

Nicholas deB. KATZENBACH, Attorney
General of the United States, Appellee.

No. 19590.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 3, 1965.

Order Filed Dec. 23, 1965.

Opinion Filed May 19, 1966.

Burger, Circuit Judge, dissented.

Mr. Thurman Arnold, Washington,
D. C., for appellant.

Mr. David W. Miller, Asst. U. S. Atty., with whom Messrs. John C. Conliff, Jr., U. S. Atty. at the time the brief was filed, and Frank Q. Nebeker and Oscar Altshuler, Asst. U. S. Attys., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and BURGER, Circuit Judge.

ORDER filed December 23, 1965

PER CURIAM.

This case came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was argued by counsel.

On consideration whereof, and

WHEREAS, the prosecution, no doubt in complete good faith, did not disclose to the defense at or before trial certain information in its possession which had some bearing on the case; and

WHEREAS, the District Court did not find whether this nondisclosure was or was not negligent; and

WHEREAS, if it was negligent, according to the test to be stated in an opinion or opinions to be filed by this court, it would follow in the view of the majority of this court that the defendant should be released on habeas corpus;

Now therefore, it is ORDERED by the court that the order appealed from herein is reversed and the case is remanded to the District Court with direction to afford a hearing and to determine whether the government was negligent and to grant or deny the writ in accordance with that determination, and it is

FURTHER ORDERED by the court that appellant be released forthwith upon the execution of a personal recognizance bond in the amount of $100 pending the hearing and determination of this matter below, and the Clerk is directed to issue a certified copy of this order to the District Court forthwith.

BURGER, Circuit Judge, dissents and will file a statement later.

BAZELON, Chief Judge:

After we affirmed appellant's grand larceny conviction in Levin v. United States, 119 U.S.App.D.C. 156, 338 F.2d 265 (1964), cert. denied, 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965), he filed the present petition for habeas corpus or a new trial. He alleges that he only recently discovered evidence in the government's possession which was not disclosed at trial. After hearing, the District Court denied relief and this appeal followed.

The indictment charged that appellant conspired with union officials "to effect a corrupt acquittal of Cross [President of the Bakery and Confectionary Workers Union] in his trial on a charge of perjury"; that in furtherance of that conspiracy appellant received $35,000 in union funds to be used to "fix" the necessary parties; and that he kept this money for himself, never carrying out his part of the "bargain." At trial, Landriscina, an officer of Cross's Union, testified that he gave appellant ten $1,000 bills on Thursday morning, February 12, 1959; at noon that day appellant returned the $1,000 bills and asked for smaller bills; an hour later, the witness gave appellant $10,000 in twenty dollar bills; arrangements were then made for the rest of the money to be delivered, in twenty dollar bills, at five o'clock the following afternoon; and this meeting and the delivery of $25,000 took place as planned.

Other government witnesses contradicted parts of Landriscina's story. Ashby and Olson, also Union officials, testified that the entire $35,000—in $1,000 bills—was obtained by Olson from the National Savings and Trust Company on the morning of the 13th and that Ashby returned to the bank at noon on the 13th and changed the money into twenty dollar bills, which he gave to Landriscina to give to appellant. Olson's check for $35,000, drawn on the Union account, was in evidence at the trial. It was dated February 12, 1959, but markings showed it was cashed on the 13th.

To meet the government's case, appellant relied on these inconsistencies and

sought to show that he was not in Washington the afternoon of the 13th. On appeal this court found that the jury could infer that the transfer of ten $1,000 bills took place on the morning of the 13th, not on the 12th as Landriscina testified.[1]

Appellant now seeks to nullify his conviction on the ground that the government failed to disclose two pieces of evidence.[2] The first item by itself is not significantly probative. It is a check for $35,000, dated February 13, 1959, drawn on the Riggs National Bank by the National Savings and Trust Company to enable National Savings to replenish its supply of $1,000 bills after Olson had withdrawn thirty-five of them. Appellant claims that it would not have been necessary to draw this check if the $1,000 bills had been returned to National Savings and Trust for exchange into twenties. The habeas corpus hearing showed, however, that the bank's practice was to obtain additional $1,000 bills by delivering a check to another bank as soon as possible after a withdrawal, though no one remembered when the messenger left or when he returned on the 13th, and that once a messenger left there was no way to recall him. This makes it entirely possible that Ashby returned the bills after the messenger left. Thus the check of National Savings and Trust is inconclusive for present purposes.

But this check must be considered along with the second piece of evidence which the government failed to disclose: a statement obtained before the trial from one McCeney, an officer of National Savings and Trust. This statement, which the government did not reveal until after the institution of these proceedings, is as follows:

I hereby recall Mr. Olson coming in with a $35,000 check, dated February 13, 1959 to be cashed * * *. Mr. Olson came in and I took him to Mr. Hooper, who, at that time, was running one of the savings windows and handling the large cash, to cash this check which he did in thousand dollar bills. I do not recall Mr. Ashby coming in to change the thousand dollar bills to smaller ones. If he did I would have taken him back to Mr. Hooper because he was handling the large bills. Mr. Hooper says he does not recall cashing this money into smaller bills that day.

The prosecutor testified at the hearing that:

[A]fter having seen this statement and having received the Grand Jury testimony that Ashby had gone to McCeney to cash the $1,000 bills, I personally placed a telephone call to the National Savings and Trust Company and talked with the gentleman who identified himself as Mr. McCeney, and I asked him if it were true that he could not recall cashing thirty-five $1,000 bills for Ashby. He said that was true. We talked about the matter and he would never state that he remembered it, he did not recall the situation, he didn't say he did not do it, he just said he didn't remember doing it.

* * * * * *

As a result of that, I did nothing further.

The Judge's findings below state, in pertinent part:

16. * * * Neither Mr. McCeney nor Mr. Hooper was called as a witness at the Levin trial. * * * At the hearing herein both Mr. McCeney and Mr. Hooper were called as witnesses by the petitioner. But the bank transactions about which inquiry was made of them having occurred more than six years previously, their recollections were in the main vague and speculative.

1. Levin v. United States, 119 U.S.App.D.C. 156, 160 n. 4, 338 F.2d 265, 269 n. 4 (1964), cert. denied, 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965).

2. Appellant also urges an additional point. The Solicitor General's opposition to certiorari stated that "Landriscina testified,

apparently incorrectly, that he made the first payment of $10,000 on February 12. * * * " Appellant argues that this is an admission, is newly discovered evidence, and discredits Landrascina's story about a meeting on the afternoon of the 13th. We see no force in this argument.

\* \* \* \* \* \*

19. The evidence at the hearing did not show that Government counsel deliberately suppressed any evidence.[3]

WHEREFORE, the court concludes as a matter of law:

\* \* \* \* \* \*

2. Petitioner has failed to prove his allegation that trial counsel deliberately suppressed evidence.

■ Relief would be available, of course, had the government deliberately presented a false picture of the facts, either by knowingly using perjured testimony,[4] failing to correct testimony when it became apparent that it was false,[5] or actively suppressing evidence known to be exculpatory.[6] But appellant urges on this appeal that the court below erred when it limited itself to findings on the question of deliberate suppression. He argues that his rights were violated if the government negligently failed to disclose that neither McCeney nor Hooper remembered exchanging the $1,000 bills for twenties.

■ A number of circuits have recently held that the deception that results from negligent nondisclosure is no less damaging than that which is a product of guile and that such nondisclosure entitles the defendant to relief.[7] We find the reasoning of such cases persuasive and essential to the fair administration of criminal justice especially in view of the disadvantages facing the accused in the trial process. See Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure*, 69 YALE L.J. 1149 (1960).

This court, too, at the behest of the Supreme Court, has granted relief in a comparable situation. In Griffin v. United States,[8] after we had affirmed defendant's conviction of murder, he moved for a new trial on the basis of newly discovered evidence relating to his claim of self-defense. The prosecution conceded that it had had evidence in its possession before trial indicating that there had been an uncommunicated threat made by the deceased. The government justified its failure to disclose this evidence on the ground that it thought the evidence would be inadmissible. The District Court denied the motion for a new trial and this court affirmed without opinion. The Supreme Court reversed and ordered this

---

3. The lower court also found that records allegedly seized and destroyed by the government were never obtained from the bank by the prosecutor, but were destroyed by the bank in accordance with its policy for outdated records.

4. Alcorta v. State of Texas, 355 U.S. 28, 31, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957); Pyle v. State of Kansas, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942); Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935).

5. Napue v. People of State of Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

6. United States ex rel. Almeida v. Baldi, 195 F.2d 815, 822, 33 A.L.R.2d 1407 (3rd Cir. 1952), cert. denied, 345 U.S. 904, 73 S.Ct. 639, 97 L.Ed. 1341 (1953). The theory of these cases is that the government has a responsibility to do more than merely seek convictions. It must also, as a protector of the public interest, assure so far as possible that the defendant has a fair trial and that he is acquitted if innocent. See, *e. g.*, Brady

v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Curran v. State of Delaware, 259 F.2d 707, 711 (3rd Cir. 1958), cert. denied 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353 (1959); *cf.* Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); United States v. Zborowski, 271 F.2d 661, 668 (2d Cir. 1959). See generally Note, *The Duty of the Prosecutor to Disclose Exculpatory Evidence*, 60 COLUM.L.REV. 858 (1960).

7. See Barbee v. Warden, 331 F.2d 842, 846 (4th Cir. 1964); United States ex rel. Meers v. Wilkins, 326 F.2d 135, 139 (2d Cir. 1964); Ashley v. State of Texas, 319 F.2d 80, 84 (5th Cir.), cert. denied 375 U.S. 931, 84 S.Ct. 331, 11 L.Ed. 2d 263 (1963); United States ex rel. Thompson v. Dye, 221 F.2d 763 (3rd Cir), cert. denied, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773 (1955); see also Thomas v. United States, 343 F.2d 49, 53 (9th Cir. 1965).

8. 83 U.S.App.D.C. 20, 164 F.2d 903 (1947), cert. denied, 333 U.S. 857, 68 S.Ct. 727, 92 L.Ed. 1137 (1948).

court to rule on the admissibility of the evidence. If we ruled that the evidence was admissible, we were to grant a new trial if we found that it would "be too dogmatic, on the basis of mere speculation, for any court to conclude that the jury would not have attached significance to the evidence favorable to the defendant had the evidence been before it."[9] We held the evidence was admissible and, relying on the standard set out by the Supreme Court, ordered a new trial.[10]

▮ Thus appellant would be entitled to relief in the present case if the government failed to disclose evidence which, in the context of this case, might have led the jury to entertain a reasonable doubt about appellant's guilt. Such a failure may be classified as negligence. The necessary findings on this issue were not made below.

Requiring government disclosure will not encourage defense counsel to be careless in trial preparation since there can be no assurance that the government, even with all its resources, will discover all significant evidence favorable to the defense. And we do not suggest that the government is required to search for evidence favorable to the accused, or to disclose all its evidence, however insignificant, to the defense.

▮ The government contends that, since the fact that McCeney and Hooper did not remember the exchange could have been discovered by appellant, the government's failure to disclose it did not violate appellant's rights.[11] Ordinarily, a finding of lack of due diligence will defeat a motion for a new trial based only upon the significance of newly discovered evidence.[12] But appellant's claim for relief based upon a breach of the prosecutor's duty of disclosure challenges the fairness, and therefore the validity, of the proceedings, and relief, either on a motion for a new trial or for habeas corpus, may not depend on whether more able, diligent or fortunate counsel might possibly have come upon the evidence on his own.[13] A criminal trial is not a game of wits between opposing counsel, the cleverer party, or the one with the greater resources, to be the "winner."[14]

▮ The government further argues that the fact that neither McCeney nor Hooper remembered the transaction was clearly not sufficiently material to re-

---

9. Griffin v. United States, 336 U.S. 704, 709, 69 S.Ct. 814, 816, 93 L.Ed. 993 (1949).

10. Griffin v. United States, 87 U.S.App. D.C. 172, 174, 183 F.2d 990, 992 (1950).

11. If appellant's counsel actually knew the facts withheld, appellant cannot now seek relief on the basis of the government's failure to disclose these same facts. Thomas v. United States, 343 F.2d 49, 54–55 (9th Cir. 1965); United States ex rel. Thompson v. Dye, 221 F.2d 763, 767 (3rd Cir.), cert. denied, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773 (1955).

Appellant's trial counsel here had talked to McCeney, without disclosing the matter on which he was working, in an effort to discover whether the bank kept numbers of their $1,000 bills. Apparently counsel hoped thereby to establish whether or not the bills were ever returned. After learning of the alleged exchange of the $1,000 bills for twenties, however, trial counsel did not return to talk with McCeney, and therefore was unaware of his inability to recall the exchange.

12. See Brodie v. United States, 111 U.S. App.D.C. 170, 172, 295 F.2d 157, 159 (1961); Thompson v. United States, 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951).

13. See Barbee v. Warden, 331 F.2d 842, 846 (4th Cir. 1964); United States ex rel. Meers v. Wilkins, 326 F.2d 135, 140 (2d Cir. 1964); United States ex rel. Thompson v. Dye, supra note 11, 221 F.2d at 768. Nor is a request for the specific evidence required before the government has a duty to disclose. United States ex rel. Meers v. Wilkins, supra, 326 F.2d at 137.

14. See, e. g., Curran v. State of Delaware, 259 F.2d 707, 711 (3rd Cir. 1958), cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353 (1959). See generally Brennan, *The Criminal Prosecution: Sporting Event or Quest for Truth*, 1963 WASH.U.L.Q. 279.

quire disclosure.[15] We think this is open to question. There were no eye-witnesses to corroborate Landriscina's story that he transferred $10,000 to appellant on February 12 and $25,000 on February 13. Partial contradiction and partial corroboration came from co-conspirator Ashby's testimony that on February 13 he gave Landriscina $35,000 to give to appellant. Clearly the credibility of Landriscina was the linchpin of the government's case. Landriscina's credibility was weakened by the Union's cancelled check and by Ashby's testimony, both indicating that Landriscina could not have transferred Union money to appellant on February 12.

In this context, we think the Government's case would have been further weakened had the defense been able to challenge Landriscina's and Ashby's stories about exchanging $1,000 bills for $20 bills, by showing that the bank officers remembered no such exchange although they clearly remembered cashing the Union's check. The question is whether this weakening might have led the jury to entertain a reasonable doubt about appellant's guilt. Since the parties may wish to be heard on this question, since the facts and record are complex, and since the judge below was also the judge at trial, we remand the case to the District Court to decide the question.

Reversed and remanded for further proceedings in accordance with this opinion.

BURGER, Circuit Judge (dissenting):

After Appellant's 1963 conviction for grand larceny had been affirmed by this Court and after the Supreme Court had denied certiorari, Appellant petitioned in the District Court for a new trial on the basis of "newly discovered evidence" and alternatively asked for release on habeas corpus. The District Court (after hearing) denied the requested relief.

On appeal from the District Court denial of relief Appellant's brief on his "newly discovered" evidence point glosses over his failure to show due diligence before trial; indeed, it would be hard for him to claim that due diligence would not have revealed the allegedly newly discovered evidence, for it is clear that he had full access to the very witnesses and information he now claims to have "newly discovered." Indeed, before trial his counsel talked with one of the key witnesses on the "newly discovered" point. The Appellant's brief also contains sweeping assertions that the Government engaged in "deliberate concealment" and "refused to disclose" relevant evidence and that it "obtained the conviction on the basis of this testimony [of Landriscina] which they knew to be perjured."

The majority recognizes Appellant's claims to be such egregious overstatement that it rejects them out of hand and instead relies on the theory that the prosecution's "negligent" nondisclosure of evidence would require setting aside the conviction; it here carries that doctrine far beyond any previous case to a point where it will put a premium on slovenly trial preparation by defense counsel and tend to allow a second trial to any defendant imaginative enough to dream up a new theory of defense as "newly discovered" because neither party elected to use it at trial.

The majority remands for the District Court to determine whether presentation to the jury of any of the information imparted by Mr. McCeney to the Government might have led to a verdict of not guilty and directs that, if such is the case,

15. The government also argues that at the habeas corpus hearing McCeney and Hooper said it was possible for the exchange to have taken place without their knowledge, so that their testimony was not particularly probative. This claim is buttressed by reference to the trial judge's findings that McCeney and Hooper were "vague and speculative" in their recollections. However, Hooper clearly stated that he remembered McCeney bringing Olson over to obtain thirty-five $1,000 bills but did not remember changing them into twenties. Hooper also testified that the normal procedures of the bank would have been violated if another teller had made the exchange without Hooper's knowledge.

the Government was obliged to give this information to the Appellant's trial counsel and its failure to do so was "negligence" violating due process and thus vitiating the conviction. All this is done in the face of Appellant's equal access as manifested by his counsel's interview with the witness in question.

The Maryland Court of Appeals, which has shown itself most diligent to protect defendants from possible adverse effects of prosecution suppression or nondisclosure of evidence, see Brady v. State, 226 Md. 422, 174 A.2d 167 (1961), aff'd, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Strosnider v. Warden, 228 Md. 663, 180 A.2d 854 (1962), has declared in no uncertain terms, "Certainly there should be no duty on the prosecution to disclose evidence that is available to the accused * * *. The defense may be as well able to explore outside sources of information as the prosecution." State v. Giles, 239 Md. 458, 470, 212 A.2d 101, 108 (1965), cert. granted, 383 U.S. 941, 86 S.Ct. 1194, 16 L.Ed.2d 205 (1966) (No. 642).[1] California has drawn praise for extending broad discovery rights to criminal defendants; yet even that jurisdiction restricts this discovery by requiring the defendant to show that he "cannot readily obtain the information through his own efforts." Traynor,

*Ground Lost and Found in Criminal Discovery*, 39 N.Y.U.L.REV. 228, 244 (1964).

No court I know of has ever invalidated a conviction because of the prosecutor's nondisclosure of evidence when the evidence was equally available to the accused. The majority asserts that "relief, either on a motion for a new trial or for habeas corpus, may not depend on whether more able, diligent or fortunate counsel might possibly have come upon the evidence on his own." It cites three cases for this proposition. None of them is in point. Two of them, Barbee v. Warden, 331 F.2d 842 (4th Cir. 1964), and United States ex rel. Thompson v. Dye, 221 F.2d 763 (3d Cir.), cert. denied, 350 U.S. 875, 76 S.Ct. 120, 100 L.Ed. 773 (1955), were cases where the prosecutors actively misled the triers of fact by evidence or argument affirmatively advanced in court. Of course, this conduct is an intrinsic violation of due process which leads almost automatically to a new trial. The situation of passive "negligent" nondisclosure is quite different. See notes 3, 4 *infra* and accompanying text. Moreover, both involved evidence entirely within the control of the State—in *Barbee* a ballistics report and in *Thompson* a police officer's testimony.[2]

The majority departs from settled doctrine and from the wise course by holding

---

1. Other courts have recognized that the availability of evidence to the defense negates a claim that the defendant's due process rights have been violated by nondisclosure. See, *e. g.*, United States v. Rutkin, 212 F.2d 641, 645 (3d Cir. 1954); Smith v. Commonwealth, 331 Mass. 585, 121 N.E.2d 707, 710–711 (1954); State v. Eaton, 302 S.W.2d 866 (Mo.1957) cert. denied, 355 U.S. 912, 78 S.Ct. 338, 2 L.Ed.2d 273 (1958); *cf.* United States v. Abraham, 347 F.2d 395 (7th Cir. 1965); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965).

2. In the third case cited by the majority, United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964), the undisclosed potential testimony would have been easily available to the defense under normal circumstances, and Judge Marshall's opinion said, "[T]he availability of witnesses to the defense through its own investigations is a relevant con-

sideration, but we do not think it is ordinarily determinative." *Id.* at 140. However, both Judge Waterman and Judge Hays emphasized in their concurring opinions that they considered it important that "assigned counsel was uncertain that he was to have trial responsibilities until shortly before the case came on for trial," *id.* (Waterman, J, concurring), and that "[t]he prosecution must have been aware * * * that assigned counsel had only a week in which to prepare the defense. The prosecutor must have known that defense counsel was unaware of the existence of the two eyewitnesses whose testimony would have been so vital to the defense." *Id.* at 141 (Hays, J., concurring in an opinion in which Waterman, J., joined). Needless to say, these statements by two of the three members of the division show that the *Meers* case bears no resemblance to the one now before us.

irrelevant the fact that both of the bank officers and their testimony were easily available to defense counsel. In so doing it ignores the entire reason for the rule that the Government's failure to disclose exculpatory evidence to criminal defendants may vitiate their convictions. The majority claims that convictions have been set aside on this principle solely because it violates due process for the Government to suppress evidence deliberately, and "the deception that results from negligent nondisclosure is no less damaging than that which is a product of guile * * *." Yet this cannot be the only reason for setting aside convictions on the ground that the Government did not affirmatively disclose exculpatory evidence.

Presentation of perjured testimony and deliberate suppression of evidence are types of conduct which not only prejudice the defendant but also violate the law, the basic duty of the prosecutor as an officer of the Court, and the very integrity of the judicial process.[3] Such conduct is impermissible. As a result, a showing that the prosecution knowingly suppressed relevant exculpatory evidence automatically entitles the defendant to a new trial, with little or no showing of prejudice.[4]

On the other hand, precisely because a trial is not to be a "game of wits", the law has always required a showing of due diligence as the precondition to gaining a new trial upon the discovery of any new and relevant evidence which was not within the exclusive control of the prosecution.[5] In short a litigant is not allowed to gain an advantage out of his own slovenly preparation for trial. To circumvent this rule, the majority sub silentio excuses the failure of defense counsel to thoroughly question a witness whom he had interviewed and in effect abandons the requirement that a party must show that his alleged newly discovered evidence could not have been found by due diligence.

The genesis, the basic rationale of the duty of disclosure, placed only on the prosecution in criminal cases, lies in the belief that giving criminal defendants counsel and the opportunity to call witnesses has not completely eliminated the reasons which led the common law, before these protections were provided, to require that the prosecutor present in court all evidence about an alleged crime, whether it helped his case or not.[6]

The presumed—and ordinarily well founded—superiority of the prosecution's facilities for fact-gathering [7] constitutes the basis for this duty to disclose exculpatory evidence and for the enforcement of it by setting aside convictions secured in part because of its violation.[8]

The simple statement of this rationale shows its inapplicability to the facts of

---

3. See, e. g., Link v. United States, 352 F. 2d 207, 210–211 (8th Cir. 1965); People v. Savvides, 1 N.Y.2d 554, 556–557, 154 N.Y.S.2d 885, 887, 136 N.E.2d 853, 854 (1956); 74 YALE L.J. 136, 138 (1964); cf. Mesarosh v. United States, 352 U.S. 1, 14, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956).

4. See, e. g., authorities cited note 3 supra; Kyle v. United States, 297 F.2d 507, 513–514 (2d Cir. 1961); Note, 60 COLUM.L. REV. 858, 863–64 (1960). But see Curran v. State of Delaware, 259 F.2d 707, 712 (3d Cir. 1958), cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed.2d 353 (1959).
By contrast, all of the cases involving "negligent" nondisclosure have required some showing of prejudice before finding a new trial justified. See Barbee v. Warden, 331 F.2d 842, 847 (4th Cir. 1964); Note, 60 COLUM.L.REV. 858, 863

(1960); 74 YALE L.J. 136, 138, 141–42 (1964). For an excellent analysis of the range of inquiry into prejudice generally, see Kyle v. United States, supra 297 F.2d at 512–515 (Friendly, J.).

5. E. g., Thompson v. United States, 88 U.S.App.D.C. 235, 188 F.2d 652 (1951); Berry v. State, 10 Ga. 511, 527 (1851).

6. Note, 60 COLUM.L.REV. 858, 865–66 (1960).

7. See, e. g., Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 YALE L.J. 1149, 1182–83, 1185–92 (1960); Traynor, Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L.REV. 228, 229, 231 (1964); 74 YALE L.J. 136, 143 (1964).

8. Application of Kapatos, 208 F.Supp. 883, 888 (S.D.N.Y.1962) (Palmieri, J.); 74

the present case. Appellant here had privately retained an experienced trial counsel; that counsel knew before trial that the Government's evidence would show that the one-thousand-dollar bills had been changed into twenties at the National Savings and Trust Company; he knew that McCeney was the officer of that bank who had allegedly been a party, as a bank official, in handling Olson's original check for $35,000; defense counsel had interviewed McCeney. This is undisputed, although glossed over by the majority. Not only did defendant fail to ask the Government for statements made by bank officers, but also he could easily have found out independently precisely as much as the Government had found—by simply talking a little longer and more carefully with the bank officers.[9] Indeed, *trial counsel could have inferred the very information the majority says the Government "failed to disclose" —i. e.,* that the bank officers had no memory of changing the one-thousand-dollar bills into twenties—*from the very fact that the Government did not call any bank officials to corroborate the Bakery Union officers' story at the trial.*

Not later than the close of the Government's case any lawyer worthy of the name should have made this appraisal. In short, if the prosecution can be called "negligent" for not telling the defense what McCeney had said, what are we to say of defense counsel's conduct in not ascertaining the same facts from McCeney when he interviewed him?

I suggest that the majority holding is a thinly disguised holding that defense counsel gave Appellant ineffective assistance in failing to call McCeney as a witness, and in the future I shall regard this case as holding nothing more than that. If the question is one of ineffective assistance, it should be considered as such candidly and directly rather than by

the back door. The majority contends that its holding will not encourage defense counsel to be careless in their trial preparation. However, if defense counsel was careless here (and it is only the majority which so decides), he has succeeded in the very result which the majority contends its "rule" will not encourage. By offering the possibility of a new trial for ineffective assistance of counsel, without facing up to that issue, the majority erects a great incentive for all counsel to neglect trial preparation and rely on what it characterizes as "the government, * * * with all its resources," to do his fact-gathering for him.

The large resources of the Government for fact-gathering, which as I have pointed out constitute the basic reason for the rule under discussion, are a necessary outgrowth of the heavy burden our system places on the Government to prove guilt beyond a reasonable doubt. When adequately equipped with investigative facilities the Government is likely to find virtually all the relevant evidence except that which is peculiarly within the control of the defendant. *Thus, the majority holding gives defense counsel an incentive to be very casual about his investigation.*

The majority opinion also overlooks the importance of the advantages which the defendant already has. Although the Government is bound to disclose all exculpatory evidence within its control, defense counsel is under no obligation to reveal evidence which would aid the prosecution. Often, of course, the most crucial facts relating to criminal charges lie in the defendant's control and are constitutionally protected from access by the prosecution. The presumption of innocence, the privilege against self-incrimination and the Government's burden of proof beyond a reasonable doubt are further protections for the defendant which the majority ignores in holding that the Government's failure to "dis-

YALE L.J. 136, 142–45 (1964); see United State ex rel. Meers v. Wilkins, 326 F.2d 135, 139–140 (2d Cir. 1964); Ellis v. United States, 120 U.S.App.D.C. 271, 273, 345 F.2d 961, 963 (1965) (Bazelon, C.J., concurring).

9. Appellant's new counsel in the instant proceeding found out the details of the bank officer's story in the same way the Government had obtained it; nothing tells us Appellant's trial counsel could not have done the same.

close" facts already easily available to the defense may have constituted a violation of due process.[10]

Stripped of its obscuring verbiage the majority opinion puts on the prosecution the impossible burden of knowing whether a particular witness has revealed to the defense the same facts he has revealed to the Government. Moreover, this is done in a vague "rule" that the District Court is to determine—long after verdict—whether the testimony of a witness interviewed by the defense but not called "might" have affected the verdict.

Moreover, there is a deeper problem with this holding. Defense counsel here may have had valid tactical reasons for not calling McCeney or questioning him further. Appellant's defense at trial was based on the theory that Ashby and Olson were telling the truth, but Landriscina had "double crossed" them and had kept the money himself or had passed it on to someone other than Levin. Use of this theory is understandable, for it is generally easier to persuade a jury that one witness is lying than that three are doing so. The alleged "new evidence" that bank officers did not remember changing the one-thousand-dollar bills would tend to impeach all three of the Bakery Union officers; if the bank had never made the change, then all three were lying, at least in part. Therefore, it is far from clear that trial counsel would have used this information even if he had known it, for he would be taking on the heavy burden of proving three witnesses lied.

The majority's remand order ignores this live possibility. Appellant is to receive a new trial if this "evidence" "might" have affected the jury verdict even absent a claim or showing that experienced defense counsel would have used it if he had known of it. Thus the majority's holding is that a defendant is entitled to a new trial for each theory of defense which his successive defense counsel can concoct, if only those new theories call for use of some evidence which defendant did not use at first trial and which the Government knew of then.

The majority attempts to justify its extraordinary approach by reciting boilerplate truths challenged by no one to the effect that defendants are entitled to fair trials and that such trials should not be a "game of wits." It ignores the fact that there is no question here of conscious withholding by prosecution nor of the prosecutor or Government witnesses violating their respective duties to the court.

Far from precluding the "game of wits" in trials, the majority's approach is a large step toward rewarding cunning rather than candor by lawyers. It puts a premium on slovenly or carefully limited preparation by the defense. Finally, it makes one more crack in what remains of the concept of judicial finality; under the majority holding a defendant may profit by hindsight evaluation of a deliberate, and even wise, but unsuccessful trial tactic.

Had I been the prosecutor here, I confess that nothing in my 30 years' experience in litigation would have alerted me to any need or "duty" to call up opposing counsel and compare notes with him on whether the particular witness had told both litigants the same facts.

I would affirm.

10. [W]hile the Government has an important duty to conduct criminal prosecutions fairly, its obligations must be examined and tested after trial, not before. It would be difficult if not impossible to assess the fairness of a prosecution prior to the time the prosecution formally rests its case at trial. * * * In the quest for fairness in the conduct of criminal trials, we must not lose sight of the many difficult problems affecting criminal cases prior to trial * * *. The defendants have real and substantial advantages in the presumption of innocence, in the right to remain silent and in the high burden of proof which the prosecution must meet. The decision of the Supreme Court in Brady v. State of Maryland [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] does not authorize additional advantages to the accused during the pre-trial stages of a prosecution. United States v. Manhattan Brush Co., 38 F.R.D. 4, 7 (S.D.N.Y.1965) (Palmieri, J.).