**Charles Robert CLARKE, Petitioner-Appellant,**

v.

**John C. BURKE, Respondent-Appellee.**

**No. 18089.**

United States Court of Appeals,
Seventh Circuit.

Feb. 10, 1971.

Rehearing Denied April 9, 1971.

William M. Coffey, Milwaukee, Wis., for petitioner-appellant.

William A. Platz, Asst. Atty. Gen., Madison, Wis., Robert W. Warren, Atty. Gen. of Wisconsin, Michael Ash, Asst. Dist. Atty. for the County of Milwaukee, Wis., for respondent-appellee.

Before KILEY, FAIRCHILD and KERNER, Circuit Judges.

KILEY, Circuit Judge.

Petitioner Clarke appeals from a district court judgment dismissing his habeas corpus petition after an evidentiary hearing. We affirm.

Clarke was convicted in a Wisconsin state court of robbery and rape. He was represented by court-appointed counsel. His conviction was affirmed. State v. Clarke, 36 Wis.2d 263, 153 N. W.2d 61 (1967). The habeas proceeding before us followed, and the district court appointed new counsel for Clarke.

The issues presented on appeal are whether the district court erred in deciding that Clarke's Fourteenth Amendment right to due process was violated by the Wisconsin prosecutor's failure to disclose to Clarke's trial counsel favorable evidence in his possession, and in deciding that Clarke was not denied his Sixth Amendment right to effective assistance of counsel at the trial.

The critical issue at the trial of this case in the Wisconsin court was the identification of Clarke as the assailant. The victim, Mrs. Anderson, and a Harold Traas, who was a deliveryman to the restaurant where the rape and robbery occurred, testified unequivocally that petitioner was the assailant.

There was testimony at the trial of the presence of persons other than Mrs. Anderson and Mr. Traas at the scene. Mrs. Anderson testified that after the rape, her assailant forced her to accompany him as he made his escape, and that in the course of the escape they encountered the building's janitor. Traas testified that at the time of the assault he stood with a waitress from a nearby restaurant, observing the assailant and victim through the window. Although both were mentioned during, neither was named or testified at, the trial.

There was also testimony that at the police lineup Mr. Traas identified Clarke as the assailant and that other witnesses viewed the lineup with him. The names of the other witnesses were not stated, and defense counsel did not seek their production.

At the evidentiary hearing on Clarke's habeas petition, Clarke's trial counsel testified that the janitor, Adam Murawski, had told him at the close of trial that Clarke was not the man he had seen in the basement of the building. However, Murawski testified at the hearing that he did not see the assailant sufficiently to be in a position to identify him. The other witness mentioned at the trial, Bonnie Fuerstenberg, could not be found for service of subpoena to appear at the hearing.

Police records of the lineup conducted in relation to the investigation of the crimes were also received in evidence at the hearing. These records disclosed that Bonnie Fuerstenberg and Murawski viewed the lineup with Traas; that Bonnie Fuerstenberg picked out a man other than Clarke as being similar in appearance to the man she saw in the restaurant, but could not make a positive identification; and that Murawski was unable to identify the assailant.

Defense trial counsel candidly admitted that he failed, through ignorance of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to make a request at trial for production of evidence upon learning of "other witnesses" than those called by the government, although the testimony of both was referred to frequently, albeit not by name; and that after interviewing the janitor between closing of proofs on Fri-

day and arguments to the jury on Monday he failed to discuss with the prosecutor his "impression" that the janitor could not identify the assailant at the lineup. Clarke's first reliance upon the janitor's testimony was in an unsuccessful motion for new trial.

## I.

Following the hearing and submission of briefs the district court found that Clarke failed to prove by a preponderance of evidence that the Wisconsin prosecutor knew of any evidence favorable to Clarke prior to his motion for new trial; and that there was no showing of suppression of evidence favorable to Clarke to justify application of the rule of Brady v. Maryland, supra.

We think the district court's denial of habeas relief was not erroneous. There was no showing that the prosecutor—deceased at the time of the hearing—had knowledge of the statement of the two witnesses at the lineup. The police testimony at the habeas hearing did not show that the records were given to the prosecutor. And in the absence of a request it is probable that the prosecutor was not alerted to any evidence the police had that may have been of aid to Clarke.

Petitioner was aware from testimony during the trial that there were other witnesses at the scene of the crime and knew that witnesses other than the government's had viewed the lineup. He should have assumed that these witnesses, since they were not called by the prosecution, failed to identify Clarke as the assailant. Nevertheless, Clarke failed to call these witnesses or move for production of their names or any of the statements they made. Clarke has failed to show that the prosecution knew anything more than he did.

This is not to say that there can never be a due process violation if the prosecutor does not know that the police has in its possession evidence possibly favorable to the defendant or if defense counsel, once put on notice of the possible existence of such evidence, fails to request it or move for its production. It is settled that prosecution willfulness in failing to produce testimony favorable to the petitioner need not be shown. Brady v. Maryland, supra; Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287 (1966). It has been held that it is not fatal to petitioner's contention that his attorney made no request for the testimony, United States v. Poole, 379 F.2d 645 (7th Cir. 1967); United States ex rel. Meers v. Wilkins, 326 F.2d 135, 137 (2nd Cir. 1964); Barbee v. Warden, Maryland Penitentiary, 331 F. 2d 842, 845–846 (4th Cir. 1964); Levin v. Katzenbach, supra; and that knowledge of the police is knowledge of the prosecutor, Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Barbee v. Warden, Maryland Penitentiary, supra. But in the absence of a knowing use of false evidence, "the problems of the courts and wider interests of society unite to require a substantially higher probability that disclosure of the evidence to the defense would have altered the result." United States v. Keogh, 391 F.2d 138, 148 (2nd Cir. 1968). Where, as here, there is no proof of active misconduct on the part of the prosecution, the "suppressed" evidence must be "vital and material" to furnish grounds for the reversal of a conviction. McMullen v. Maxwell, 3 Ohio St.2d 160, 209 N.E.2d 449, 455 (1965). See also Barbee v. Warden, Maryland Penitentiary, supra, 331 F.2d at 847; Levin v. Clark, 133 U. S.App.D.C. 6, 408 F.2d 1209, 1211–1212 (5th Cir. 1967). And it is on this ground that petitioner must fail.

Clarke has made no showing that either Murawski or Bonnie Fuerstenberg would testify that he was not the man who committed the crime. Indeed, Murawski's statements at the lineup and his testimony at the hearing indicate that he did not get a sufficient view of the assailant to testify one way or the other. And the police record shows that Bonnie Fuerstenberg stated at the lineup that the assailant "looks similar to #1" (who was not Clarke), and that she was

not able to make a positive identification. We do not think this evidence is sufficiently favorable to petitioner—in the light of the positive identification by Mrs. Anderson and Harold Traas—to require Wisconsin to grant him a new trial.

Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968), and Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842 (4th Cir. 1964), relied on by petitioner, are inapposite. In *Jackson*, the sole witness to the rape, other than the victim, had told the police and the prosecutor that Jackson was not the assailant because his skin was too dark in color. In *Barbee,* the defendant's gun was displayed at trial to several police witnesses who stated that the gun was "similar" to the one used by the person who did the shooting, even though police ballistics reports indicated that the bullet recovered from the victim was not fired from defendant's gun. In both of these cases, the evidence not disclosed was materially favorable to defendant. And in both cases, the prosecution was involved in some misconduct. In *Jackson,* the witness had told the prosecutor what she had told the police, and in *Barbee* the prosecutor had exhibited the gun at trial when he knew, or should have known, the results of the test.

## II.

Clarke's trial attorney testified at the hearing that the Clarke case was his first jury trial. That fact in itself is not always a shortcoming before a jury. The district court found that what shortcomings there were in the trial attorney's performance did not reult in "a sham and mockery of justice" so as to amount to a denial of Sixth Amendment rights to effective representation. We cannot hold otherwise on the record here. The attorney did cross-examine, at the trial, the victim of the crime, and a corroborating government witness, on the critical issue of identification, and presented testimony supporting Clarke's alibi defense. The jury presumably credited the identification testimony of the victim and corroborating witness.

Affirmed.