STATE of Iowa, Appellee,

v.

Steven Ray WYCOFF, Appellant.

No. 59594.

Supreme Court of Iowa.

June 29, 1977.

Gordon Liles, Fort Madison, for appellant.

Richard C. Turner, Atty. Gen., Mark S. Beckman, Richard Williams, Asst. Attys. Gen., and James P. Hoffman, Lee County Atty., for appellee.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and HARRIS, JJ.

UHLENHOPP, Justice.

This appeal involves issues which arose in a prosecution of a prison inmate for first-degree murder.

In November 1975, Cecil Polson, Thomas L. Garrett, Harold Tressler, and defendant Steven Ray Wycoff were inmates of Iowa State Penitentiary. Polson died from multiple stab wounds on November 3, 1975. His cell was several levels above Garrett's. The State offered Garrett as a witness. He testified he saw defendant with a knife climbing the windows and cells from the lower level upward out of Garrett's sight, he heard screams from the area of Polson's cell, and he then saw defendant climb back down. Neither Wycoff's nor Polson's cell was locked at the time.

The grand jury indicted defendant with first-degree murder, a petit jury found him guilty, and the trial court sentenced him to life imprisonment. He appealed.

I. The State offered evidence of two alleged conversations relating to motive. One conversation, if believed, tended to show defendant killed Polson as a way to pay a debt defendant owed Tressler. The other conversation, if believed, tended to show defendant intended to rob Polson of jewelry.

The first conversation occurred about three days prior to Polson's death. It was between defendant and Tressler and was overheard by Garrett, who testified:

Q. [Prosecutor] Did you ever see Steven Wycoff and inmate Harold Tressler together? A. Yes.

Q. Did you ever hear the two of them have any conversations with each other about Cecil Polson? A. Yes, I did.

Q. When was this? A. Before this all came down.

Q. You remember approximately how long before? A. About two or three days.

Q. Would you relate that conversation to the jury, please.

Mr. Hutcheson [Defense Attorney]: Objection, hearsay, Your Honor.

The Court: Overruled.

Q. [Prosecutor] Go ahead. A. Tressler wanted some money that Steve owed him; Steve didn't have it.

Q. And did the conversation go further than that? A. Yes.

Q. Would you describe it to us, please. . . . A. He said, well he could— Tressler told Steve how he could pay it some other way—by taking care of a lumper upstairs who was a raper and a snitch.

Q. Did they say who that was? A. Yes, sir.

Q. Who was it? A. Polson.

The other conversation was between Tressler and James Menke, a prison officer. The parties agree that this conversation occurred but disagree about its contents. The conversation requires consideration of prior testimony in the case.

Tressler testified for defendant. In the course of his testimony on direct he stated that Menke talked to him after the homicide and asked him to testify that defendant killed Polson. On cross-examination of Tressler, this occurred:

Q. [Prosecutor] Didn't you, in that conversation with Jim Menke, tell him that Wycoff had done it? A. No, I didn't. I have—

Q. Didn't you tell him Wycoff had come to you and tried to get you to help him rob Polson? A. No, I didn't.

Q. You didn't tell him any of those things? A. No, I didn't.

Q. You're absolutely sure of that? A. I'm positive of that.

On rebuttal, the State called Menke as a witness and the prosecutor asked him if he had a conversation with Tressler after Polson's death. Menke answered affirmatively. Then this occurred:

Q. [Prosecutor] Would you describe that conversation to us please, the best you recall it.

Mr. Hutcheson [defense counsel]: Same objection [hearsay], Your Honor.

The Court: Overruled.

A. [Menke] This was when he was in cellhouse 20 administrative segregation. He requested I come over and talk to him, which I did, and during our conversation, he stated to me that on the Friday before, Mr. Wycoff wanted him to help rob Polson of some jewelry, which he didn't want no part of. He said because he was in enough trouble in the institution and he didn't want to get involved any more, and this had continued again Sunday morning in his cell, in Tressler's cell, which he again denied—he didn't want no part of it.

■■■ As to the first conversation, the trial court correctly overruled the objection of hearsay. Garrett testified Tressler told defendant he could pay his debt to Tressler by taking care of the lumper upstairs, Polson. Soon afterward Garrett saw defendant with a knife climb the cells, heard the screams, and saw defendant climb back down. Polson was found stabbed to death.

The State did not introduce Tressler's offer to defendant to prove an adoptive admission by defendant. Nor did it introduce Tressler's offer to prove the truth of that offer. It introduced the offer to show the offer itself, as constituting defendant's motive for "taking care of the lumper upstairs." Thus Tressler's offer was not a hearsay statement. Hearsay consisted of an out-of-court statement which is offered

to prove the truth of what was said, not simply that it was said. *State v. Watson*, 242 N.W.2d 702 (Iowa); *Ruden v. Hansen*, 206 N.W.2d 713 (Iowa).

■■■ The court also properly overruled defendant's hearsay objection to the second conversation, for two reasons. First, defendant himself, on his direct examination of Tressler, brought out the Tressler-Menke conversation. He did so because of Tressler's favorable testimony that Menke tried to get Tressler to testify against defendant. Now defendant objects because the State contradicts Tressler's testimony by the other party to the conversation: Menke testifies that the content of the conversation was different. We think it would be a strange doctrine indeed, and one to which we cannot subscribe, that would permit one side to show the content of a conversation and then be able to silence the other side about the conversation, on the ground of hearsay. The present situation is merely an illustration of the right of a party to contradict a witness by showing the fact is otherwise. 81 Am.Jur.2d Witnesses § 612 at 621; 98 C.J.S. Witnesses § 639 at page 662 ("Evidence is admissible to contradict another witness' version of a conversation."). Menke's testimony, thus used, constitutes substantive proof of the conversation.

Second, after a foundation had been laid with Tressler, the Menke testimony was admissible as showing a prior inconsistent statement by Tressler. On cross-examination, Tressler testified he did not tell Menke defendant tried to get him to help rob Polson. On the State's rebuttal, Menke testified Tressler did tell him defendant wanted Tressler to help rob Polson of some jewelry. This is a typical illustration of a prior inconsistent statement. *State v. Peterson*, 219 N.W.2d 665 (Iowa); *State v. Thomas*, 162 N.W.2d 724. Menke's testimony, thus used, is impeaching evidence.

We find no error in these rulings.

■■■ II. A State's witness testified to a test conducted in the prison by having an employee scale the cells from the bottom

tier to the location of Polson's cell, and return. Substantial similarity must appear to make such tests admissible evidence. *Galbraith v. George*, 217 N.W.2d 598 (Iowa); *Althof v. Benson*, 259 Iowa 1254, 147 N.W.2d 875. Trial courts have some discretion in this area. *State v. Lunsford*, 204 N.W.2d 613 (Iowa). The similarities and differences here were made clear to the jury, and the trial court did not abuse its discretion in permitting the test to be shown.

III. We have carefully considered defendant's other assigned errors, but do not find merit in them. Defendant's request for personnel files was of a dragnet variety and not within the parameters of *State v. Eads*, 166 N.W.2d 766 (Iowa). The trial court acted within its discretion in holding that defendant was not deprived of a fair trial by prosecutorial misconduct in characterizing witnesses or in jury argument, or in other respects. See *State v. Lass*, 228 N.W.2d 758 (Iowa); *State v. O'Kelly*, 211 N.W.2d 589 (Iowa).

We thus uphold the judgment and sentence.

AFFIRMED.