**Leroy J. ELLIS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18424.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 8, 1964.

Decided Feb. 25, 1965.

Mr. John McDaniel, Washington, D. C. (appointed by the District Court), for appellant.

Mr. Nathan Lewin, Atty., Dept. of Justice, with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Joseph A. Lowther, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and BURGER, Circuit Judges.

PER CURIAM.

Appellant was convicted of manslaughter. According to prosecution witnesses, appellant fought with James Wilson, Jr., and struck him on the head with a wooden board on June 30, 1963. One week later, on July 6, Wilson was found by a police officer lying unconscious on the street. The Deputy Coroner testified that Wilson died on July 6 from "increased intracranial pressure due to an epidural, which is a collection of

blood above the thickest covering of the brain, between the thickest covering of the brain and the skull * * *." He also testified that Wilson had a fractured skull and that his blood at his death contained 0.25 per cent alcohol.

Appellant testified that two police officers, who had arrested him for the alleged offense, told him "that they knew that James Wilson was released from the hospital the same night I was supposed to have hit him and they also knew he was picked up for being drunk on the 6th of July." His testimony that the police told him Wilson was released from a hospital following the June 30 fight was not contradicted. Although the Government called one of the arresting officers, he was not asked about this; neither were any hospital records introduced. On the record in its present state the causal connection between appellant's blow and Wilson's death was attenuated. The Government put on medical evidence that such a time gap between a blow on the head and the victim's death from the blow is possible; but it is also possible that some intervening event caused Wilson's death. If Wilson was, in fact, admitted to the hospital on June 30, examined, and released that night, this would weaken the causal chain still further. It seems improbable that a man with a severe head injury with fatal potentialities would be treated so casually by a hospital. Hence, evidence of a hospital discharge, without some explanation of the reasons for discharge, would tend to exculpate appellant.

The Government's case is such, that under these peculiar facts, we think it appropriate to remand the case for a further hearing to explore appellant's allegation of the Government's knowledge of Wilson's hospitalization on June 30. If the police or prosecutor knew of evidence that appellant's blow might not have been the proximate cause of Wilson's death, there might be a due process issue under Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

A just disposition of the case requires a fuller development of the events which transpired in the week between appellant's blow and Wilson's death, and the Government's knowledge of them. 28 U.S.C. § 2106. The record is remanded for a further hearing and consideration of the case in the light of such information as is uncovered. If information which comes to light on this remand makes a new trial appropriate, the District Court should order a new trial. If the District Court concludes that a new trial is not needed, the record will be returned for our further consideration. At that time we can consider such issues of law as are presented by the full record.

So ordered.

BAZELON, Chief Judge (concurring).

I agree that the record should be remanded for an inquiry by the District Court. But I do not think the opinion of the court provides sufficient guidance to assure that an adequate record will be developed at this inquiry.

Appellant allegedly struck James Wilson, Jr.,[1] in the head with a wooden board on June 30, 1963. Wilson was found lying unconscious on the street one week later, and subsequently died from injuries apparently due to a fractured skull. Appellant testified that two police officers, who had arrested him for the alleged offense, told him "that they knew that James Wilson was released from the hospital the same night I was supposed to have hit him and they also knew he was picked up for being drunk on the 6th of July." He also testified that he saw Wilson on July 2, 3 and 4 with another man, Cooper, who had been involved in the June 30 fight. Appellant said he saw "three men run Cooper and Wilson down the alley * * *" on July 4 and he then saw Cooper with "his leg in a cast and his arm * * * broken" on July 7—the day after Wilson died of a fractured skull. Cooper was not called as a witness at trial.

1. James Wilson, Jr., was stipulated at trial to be the man appellant had struck on June 30.

Appellant's testimony that the police told him Wilson was released from a hospital following the June 30 fight was not contradicted. Although the Government called one of the arresting officers, he was not asked about this.[2] Neither did the Government introduce the hospital records nor explain this omission. This leaves open a serious question whether the prosecutor or police knew, or had reason to know, of evidence that appellant's blow on June 30 might not have been the proximate cause of Wilson's death. If the police did have such information[3] or if the prosecutor failed to bring it forward at trial, even believing in good faith that the information was unreliable or legally inadmissible,[4] appellant's due process rights would have been violated.[5]

It is not clear from this record whether appellant's attorney knew before trial of appellant's allegation that the police had material exculpatory information. But even if the attorney did know of this allegation, we cannot presume that he could successfully have obtained this information from the Government witnesses because of the virtual non-availability of pretrial criminal discovery in these circumstances. See Goldstein, *The State and the Accused: Balance of Advantage in Criminal Procedure*, 69 YALE L.J. 1149, 1180-85 (1960); compare 18 U.S.C. § 3500. Moreover, the possibility that appellant might have developed this information without recourse to Government files or witnesses, by searching hospital records or by locating Wilson's alleged companion, Cooper, would not necessarily relieve the Government of its duty to disclose exculpatory information. Safeguards are required to ensure that a defendant is not disadvantaged by his indigency—and perhaps wrongfully convicted. Such measures as appointment of counsel, free transcript and appeal without prepayment of costs do not exhaust that responsibility.

" 'The purpose of a trial is as much the acquittal of an innocent person as it is the conviction of a guilty one. The average accused usually does not have the manpower or resources available to the state in its investigation of the crime. Nor does he have access to all of the evidence, much of which has usually been removed or obliterated by the time he learns that he is to be tried for the crime.' "[6]

Where, because of defendant's poverty, exculpatory information may be more readily available to the Government, it has a duty to bring that information forward or explain its failure to do so. Elementary justice requires no less.

2. It was incumbent on the Government to rebut appellant's allegation that the police had material exculpatory information. Wesson v. United States, 172 F. 2d 931 (8th Cir. 1949). See United States v. Lessaris, 221 F.2d 211 (7th Cir. 1955); United States v. Di Re, 332 U.S. 581, 593-594, 68 S.Ct. 222, 92 L. Ed. 210 (1948).

3. Suppression of information by the police without the prosecutor's knowledge is itself sufficient to establish a violation of due process rights. Curran v. State of Delaware, 259 F.2d 707 (3d Cir. 1958).

4. Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949).

5. It need not be shown that false testimony was offered at trial. Due process is violated if testimony is suppressed which would have been favorable to the defense, even though this evidence would not have directly contradicted evidence offered by the Government. Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

6. Application of Kapatos, 208 F.Supp. 883, 888 (S.D.N.Y.1962), cited with approval, United States ex rel. Meers v. Wilkins, 326 F.2d 135, 139 (2d. Cir. 1964). See Smith v. Commonwealth, 331 Mass. 585, 121 N.E.2d 707, 710-711 (1954); United States ex rel. Butler v. Maroney, 319 F.2d 622 (3d Cir. 1963); United States ex rel. Thompson v. Dye, 221 F.2d 763 (3d Cir. 1955); Note, *The Duty of the Prosecutor to Disclose Exculpatory Evidence*, 60 COLUM.L. REV. 858, 861 (1960).

I think a just disposition, 28 U.S.C. § 2106, requires that the case be remanded to the District Court with directions to conduct a hearing on whether the Government met its duty, as set out in this opinion, to protect appellant's rights.