THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN MATERA, JOSEPH FLORIO, WILLIAM CRABBE, THOMAS MATTEO and JOHN FRANZESE, Defendants.

Supreme Court, Criminal Term, Queens County, January 5, 1967.

*Evseroff, Newman & Sonenshine (Jacob R. Evseroff* of counsel), for John Matera, defendant. *Philip Vitello* for Joseph Florio, defendant. *Herbert A. Lyon* and *William Santoro* for William Crabbe, defendant. *Kleinman, Gold & Landsman (William W. Kleinman* of counsel), for Thomas Matteo, defendant. *Sabbatino & Todarelli (Peter L. F. Sabbatino* of counsel),

for John Franzese, defendant. *Nat H. Hentel, District Attorney* (*Lawrence T. Gresser* and *Timothy J. Flaherty* of counsel), for plaintiff.

PETER T. FARRELL, J. Defendants are jointly accused of murder in the first degree by an indictment, drawn in the common-law form, alleging that on or about August 5, 1964, they acted in concert in the commission of the crime, by shooting and stabbing the deceased. The following motions are decided herewith.

Motion No. 1 — This motion is made on behalf of defendant Matera for an order permitting him to inspect the Grand Jury minutes or, in the alternative, for an order dismissing the indictment as against him, on the ground that the evidence upon which it was found was insufficient as a matter of law and for a further order directing the District Attorney to furnish a bill of particulars, specifying 3 items.

Motion No. 2 — This motion is made on behalf of defendant Florio for an order granting him an inspection of the Grand Jury minutes or, in the alternative, that the court inspect the minutes and order that the indictment be dismissed as against him, on the ground that it is founded on insufficient legal evidence.

Motion No. 3 — This motion is also made on behalf of defendant Florio, for an order directing the District Attorney to furnish him with a bill of particulars embracing 21 items, including the cause of decedent's death.

Motion No. 4 — This motion is made on behalf of defendant Crabbe for an order granting him permission to inspect the Grand Jury minutes or, in the alternative, for a dismissal of the " information " [*sic*] as against him, for want of sufficient evidentiary foundation.

Motion No. 5 — This motion is made on behalf of defendant Crabbe for an order directing the District Attorney to furnish him with a bill of particulars, specifying 14 items.

Motion No. 6 — This motion is made on behalf of defendant Matteo for an order granting him an inspection of the Grand Jury minutes or, in the alternative (in substance), that the court inspect the minutes and order that the indictment be dismissed as against the moving defendant because it is not based on sufficient legal evidence.

Motion No. 7 — This motion is likewise made on behalf of defendant Matteo, and seeks an order requiring the District Attorney to furnish a bill of particulars, specifying 13 items.

Motion No. 8 — This motion is made on behalf of defendant Franzese (1) for an order granting him an inspection of the Grand Jury minutes or, in the alternative, that the court inspect the minutes and order that the indictment be dismissed, as against him, on the ground that the evidence before the Grand Jury was legally insufficient to warrant the finding thereof; (2) for an order directing the District Attorney to furnish a bill of particulars, enumerating 8 items and (3) for an order directing the District Attorney (a) to permit defendant to inspect and copy any written or recorded statements, confessions or admissions allegedly made by him; (b) to permit defendant to inspect and copy any written or recorded memoranda of oral confessions, if any, claimed to have been made by him and (c) to permit defendant to inspect and copy portions, or the whole, of books, papers, documents or copies thereof " and whatever tangible objects are in the possession or under the control of the District Attorney and which may be material to the issues involved in this case, including articles of wearing apparel, eye glasses and other personal effects found on the person of (deceased) at the time his body was discovered " and (d) " for such other and further relief as may be just and proper in the premises ".

Each motion for an order granting the respective defendants permission to inspect the Grand Jury minutes is denied.

Each motion for an order dismissing the indictment on the ground that the finding thereof was not warranted by the evidence presented to the Grand Jury is likewise denied. In accordance with the requests of the moving parties, the court has inspected the minutes and finds the evidence sufficient to justify the action of the Grand Jury in jointly indicting defendants for the crime charged (Code Crim. Pro., § 251).

The District Attorney is directed to supply each of the defendants with a copy of the report of the autopsy performed on the body of the deceased. In all other respects, each motion for an order directing the District Attorney to furnish defendants a bill of particulars, is denied.

Orders accordingly are made and entered herewith disposing of each separate motion. Ordinarily, motions of this kind are decided with minimal discussion, if any. This case is exceptional in that the circumstances dictate an unusually narrow confinement of the exercise of the court's discretion.

The body of the deceased was discovered floating in Jamaica Bay on August 24, 1964, bearing not merely the unmistakable signs of murder but, more significantly, evidencing a craftsmanship commonly employed in enforcement of the law of the jungle.

It was tied up, weighted down by concrete blocks and wrapped in heavy chain as well. Obviously, the decedent had incurred someone's deadly animosity, in his lifetime. Through the medium of their motions for bills of particulars, the moving defendants would have the court direct the District Attorney to supply them with the precise date and hour when, as well as the precise place where, decedent was shot and stabbed. Ordinarily, the District Attorney can fairly be expected to meet such requirements but this is not a usual case. On the argument of this motion I was predisposed to regard the time alleged in the indictment as insufficient to satisfy the requirements of fundamental fairness, particularly in view of the fact that the District Attorney had served demands for the particulars of any alibis that defendants intend to offer on the trial. Upon a reading of the Grand Jury minutes, however, I came to appreciate the force of the Assistant District Attorney's statement, on argument, that

" Factually, this is not as simple as it is laid out to be. Factually * * * the deceased disappeared from his haunts on or about August 4, 1964, and was picked up in the bay, with concrete shoes, on August 24, 1964 * * *. This * * * thing has been pieced together as a result of continuous police observation and work over a period of two years * * *. I will say no more. I leave that to the reading of the minutes, factually." I now perceive that the fair import of the Assistant District Attorney's remarks was that the District Attorney does not have knowledge or information that would enable him to be more specific in stating the time of the commission of the homicide and the content of the Grand Jury minutes makes it clear that he was not mistaken. There has, of course, never been any question about his sincerity. Thus, in declining to require the District Attorney to specify the time precisely, as demanded by defendants, I simply recognize his inability to do so.

While the resulting disadvantage to defendants is apparently aggravated by the District Attorney's demand for a bill of particulars, their predicament was actually created by the perpetrators of the crime, of which these defendants are presumably innocent. Hence, as between defendants and the District Attorney, the disadvantage is mutual and the tolerance on both sides should be equal. Needless to say, I cannot bind the Trial Judge by a pretrial ruling and any suggestive utterance along that line would be both inappropriate and superfluous, for the trial court's conscience will be at least as sensitive as my own.

To a lesser extent the same is true of defendants' demands that the District Attorney specify the precise place of the com-

mission of the acts of fatal violence.[1] The allegations of the indictment suggest that there may have been contributing causes of the death. The actual perpetrators know when and where the shooting and stabbing occurred. In a different setting, my sense of judicial discretion would require that defendants be more adequately informed as to the place of commission of the acts causing the death, if known by the District Attorney. There are cases, however, in which discretion is necessarily guided by other considerations and my examination of the Grand Jury minutes persuades me that this is such a case.

My earlier reference to " craftsmanship " in disposing of the body of the victim of this homicide was made because of the realistic connotation of the word and not what might be supposed to be its dramatic undertone. The point is, that the person or persons who murdered the deceased and got rid of his remains dealt with the body in such manner as to offer an impressive warning to others who might invite their enmity or that of any others at whose instance they may have acted. The hazard to anyone who might connect them with the killing, directly or circumstantially, is immediately obvious and it is not unreasonable to apprehend that those who participated would welcome and follow up any clues afforded by details bared in a bill of particulars, so as to enable them to identify the witnesses and deal with them in such manner as the criminal mind might think appropriate. In such case there is also the possibility of prejudice to these defendants by the imputation to them of responsibility for the conduct, without supporting evidence.[2] And, the risk to witnesses increases in proportion to the extent of the disclosure of informative evidentiary details. There was no discussion of this potential on the argument of these motions.

After a reading of the minutes, I fully understand the reasons for the Assistant District Attorney's reticence on the argument, for I now find myself in the same situation. I am obliged to say that an adequate discussion of the merits of the motions for bills of particulars and other disclosures would inevitably involve a revelation of " *evidentiary* " details that would be dangerously useful in identifying witnesses by the process of exclusion. I

---

1. The time factor is relatively more important than the place of the crime. For example, if defendants were attending a meeting in a rectory at the precise time of the commission of a murder in the basement beneath, reasonable doubt of their guilt would certainly not be suppressed by the space factor.

2. By newspaper publicity of the kind which the counsel say has already occurred and has given them many of the particulars they seek, but not dependably, since the information is not official.

emphasize the word " evidentiary " because, if they do not actually put it in the category of profanity, many distinguished Judges and legal scholars at least regard it as a battered shield of an indefensible opposition to fundamental fairness in criminal prosecutions.

In their effort to persuade the court to grant their requests in this case, the counsel pointed out, correctly that the trend of judicial and professional thought rejects the view that the District Attorney should not be compelled to disclose particulars that are " evidentiary in nature " and that a respectable consensus of opinion deplores continuance of a state of affairs where, in the words of one of the advocates, " the cards are in the one hand and not in the other." This court was urged to become a " pioneer " and, in effect, break a trail toward an ideal, or at least follow one that others have begun. Both the argument and the appeal have a familiar sound. In effect, I have been told that the forward-step " is justified  *  *  *  by the germinal developments of a like power in the courts of [this and] other States, by the public policy implicit in the rule of uniformity of evidence, and by the necessities of justice " (*People ex rel. Lemon* v. *Supreme Court,* 245 N. Y. 24, 33). The counsel do not, of course, take the position that the latitude of judicial discretion is unlimited. They contend that in this case, it should be exercised liberally, in their favor. It is already apparent that the court holds a contrary view and I have already pointed out that any expression of that view is substantially curtailed by concern for the safety of the witnesses.

It should, however, be understood — just as clearly — that no *rights* which the law gives these defendants are being compromised or denied because the interests of the witnesses are considered relatively more important. It should go without saying that that would be so utterly opposed to basic concepts of justice as to transcend the power of the court. A proper exercise of discretion therefore, involves an effort to reconcile the interests of both parties within proper limits. In that connection, the inflection of the memorandum of law submitted on behalf of defendant Franzese impels me to go back to fundamentals so as to clarify the perspective beclouded by ignoring them on the theory that they have no part whatever in the process of decision of an application for a bill of particulars.

Under our system of criminal procedure, an indictment of the kind handed up in this case (the so-called long form) must, among other things, contain " a plain and concise statement of the act constituting the crime, without unnecessary repetition " (Code Crim. Pro., § 275). The purpose of the indictment is " to

identify the charge against a defendant so that his conviction or acquittal may prevent a subsequent charge for the same offense and also to notify him of the nature and character of the crime charged against him to the end that he may prepare a defense '' (*People* v. *Williams,* 243 N. Y. 162, 165). If the language of the indictment serves those purposes, it is sufficient as a matter of law (*People* v. *Armlin,* 6 N Y 2d 231, 234). But, as all Judges will agree: '' Starting with these fundamental rules we are met with much difficulty in their practical application '' (*People* v. *Farson,* 244 N. Y. 413, 418).

In undertaking that task however, we are not entirely without direction markers. '' All the special or particular means employed in the commission of the offense need not be set out in the indictment '' and if '' the crime is sufficiently identified * * * the further particulars constituting the offense are matters of *evidence* which need not be set forth '' (*People* v. *Farson, supra,* pp. 419–420; emphasis supplied). One of our most distinguished Judges once characterized the evolution of those principles in these words: '' In New York * * * the courts, acting under the command of the Legislature, measure the sufficiency of indictments solely in relation to the *substantial rights* of the accused, guaranteed either by the express language or the fair intendment of the Constitution '' (*People* v. *Bogdanoff,* 254 N. Y. 16, 23, LEHMAN, J., emphasis supplied). With the addition of the propositions that a '' defendant further has the right to obtain a bill of particulars if he desires additional information as to the nature of the charge '' (*People* v. *Dabek,* 18 A D 2d 773) but that to some extent at least, the grant or denial of particulars depends upon the sound discretion of the court (*People* v. *Bogdanoff, supra,* p. 24), the boundaries of a defendant's *rights* have been laid out and crossed and the judicial process enters the field of discretion. Probably because of its very nature, it offers little in the way of guidance from the appellate courts.

From comparison with the neighboring area of disclosure and inspection we may deduce that the power to compel discovery of particulars in the pretrial stage of a criminal cause should not be exercised simply because a study of the *evidence* will be helpful to a defendant in preparing his defense. '' At such a stage of the contest, a remedy so drastic is within the condemnation of the rule that inspection may not be had for the sole purpose of prying into the case of one's opponent ''. Hence, beyond a certain point, a judicial mandate may become '' an assumption of power where none has been confided '' (*People ex rel. Lemon* v. *Supreme Court, supra,* p. 34). Without approaching the

border line between possession and usurpation of judicial power we know that when its exercise to permit a discovery is proper (*Matter of Silver* v. *Sobel,* 7 A D 2d 728) an improvident refusal to do so is not necessarily so prejudicial as to require a new trial (*People* v. *Munoz,* 11 A D 2d 79, 85, affd. 9 N Y 2d 638). Decisions in the courts of the Federal jurisdiction and those of our sister States are of interest, whether or not their procedure has been implemented by the adoption of appropriate rules.[3] In New Hampshire, where it is now "well settled * * * that the Trial Court has the inherent power in its discretion to compel discovery in a criminal case if the interests of justice so require " the rule is, that: "in exercising its discretion, the Trial Court is to consider, under the circumstances of the case, the defendant's need of the discovery sought to properly defend himself and the adverse effect which such discovery might have on the proper prosecution of the offense. State v. Cook, 43 N. J. 560, 206 A. 2d 359." (*State* v. *Healey,* 106 N. H. 308, 210 A. 2d 846, 487.) In an earlier case (*State* v. *Superior Court,* 106 N. H. 228, 208 A. 2d 832), prohibition was invoked to challenge a Superior Court order for discovery. The court to which the application was originally made had interpreted a part of the defendant's motion as a request for an order directing the prosecution to file a bill of certain particulars and had granted it. When the Supreme Court came to consider the latter aspect of the lower court's order it said: " The purpose of a bill of particulars is to protect a defendant against a second prosecution for an inadequately described offense and to enable him to prepare an intelligent defense. * * * It has long been the law in this jurisdiction that to meet constitutional requirements an indictment must inform the accused of the nature and cause of the accusation with sufficient definiteness so that he can prepare for trial * * *. It must allege ' every element of the offense charged in language sufficiently definite to apprise the respondents of what they must be prepared to meet for trial' * * *. We hold that the indictments in this case meet these requirements. ' However desirable it might seem to an accused that the State should be compelled to set out in an indictment the details of the evidence on which it relies to sustain charges made, respondents are not

---

3. Defendant Franzese's memorandum of law omits mention of any New Jersey rules. The facilities of this court's library do not include a copy, but the opinion in *State* v. *Trantino* (44 N. J. 358) indicates that some such rules exist. Inquiry discloses that they are printed in a volume which is not a part of the New Jersey Statutes Annotated, and is distributed by a different publisher.

Justice Sobel (then County Judge) noted, in 1960, that New Jersey had adopted "liberal rules" (*People* v. *D'Andrea,* 20 Misc 2d 1070, 1076).

entitled by law to that information ' * * *. By granting defendant's motion for a bill of particulars the Trial Court compels the State to do just that. That part of the Court's order is set aside " (208 A. 2d 832, 835). The order thus set aside had required the prosecutor to particularize the time and date of the abduction of a murder victim, the geographic locale or place from which she was abducted, the date and time when she died and the geographic locale or place where she was murdered, '' providing the information sought is actually known to the State's counsel at this time.'' The lower court did not specifically require the State to disclose the '' means or conveyance '' whereby the girl was abducted (208 A. 2d 832, 835).

The opinion just quoted answers the dubious comment in defendant Franzese's memorandum of law, to the effect that '' the standard answer of our courts when confronted with a motion to dismiss an indictment for insufficiency is that the defendant's relief lies in a demand for a Bill of Particulars.''[4] The broad perspective restored by return to the fundamentals which the same defendant's memorandum dismisses as undecisive, reminds us that a defendant has no right to have evidentiary details of the crime laid before him in either an indictment or a bill of particulars and that there are limits to the discretionary power by the exercise of which he may be more fully informed of the nature of the charge against which he is required to defend. The necessarily general rule for judicial guidance is made clear by a variety of expressions as e.g., '' to prevent a failure of justice '' (*People ex rel. Lemon* v. *Supreme Court, supra*, p. 29); '' a failure of justice may result from its suppression '' (p. 30); '' in furtherance of justice '' (p. 31)[5]; '' the necessities of justice '' (p. 33) and '' when the interests of justice will be served'' (*People* v. *Perrell*, 47 Misc 2d 1024, 1025), among others.

The dominant principle has been succinctly translated into practical application by Judge MARSHALL, in an opinion written in *People* v. *Miller* (42 Misc 2d 794, 796): '' Where it appears

---

4. The memorandum also remarks that our courts have repeatedly said "that the purpose of a Bill of Particulars is not *solely* to shore up the indictment, as the District Attorney's affidavit appears to suggest" (emphasis supplied).

The long-form indictment *cannot* be "shored up" by a bill of particulars (see, e.g., *People* v. *Corbalis*, 178 N. Y. 516, 522–523; *People* v. *Bogdanoff*, *supra*, pp. 23–24).

Judge SOBEL's truly "informative historical background of this practice" (*People* v. *Berkowitz*, 14 Misc 2d 384) makes it clear that only the *simplified* form of indictment may be supported by reference to a bill of particulars (see Code Crim Pro., §§ 295-b–295-l).

5. *People* v. *Courtney*, 40 Misc 2d 541, 543.

that there is evidence in the possession or control of the District Attorney that may aid in the speedier trial of the case without damage or prejudice to the prosecution a right sense of justice decrees that it should be available for discovery and inspection. It would be difficult, if not impossible, to enunciate a particular and definitive concept or controlling criteria applicable to all cases. Suffice it to say that justice should be the primary consideration in each case, justice which will serve the accused and not prejudice the rights of the prosecution.'' This interpretation is in perfect accord with the view of the New Hampshire Supreme Court that the discretion of the trial court is to be directed by its considered judgment of the defendant's need of the disclosure as well as its potentially adverse effect on the proper prosecution of the offense. Judge MARSHALL has enumerated a number of factors, one of which I pointedly omit for obvious reasons. The others include the specific purpose for which the disclosure is sought, whether it will tend to exculpate the defendant and whether or not his request is '' for obviously exploratory purposes '' (p. 796). By blending his conclusions with those reached by the New Hampshire Supreme Court I gather what I consider to be the course of correct and fair action.

In deciding whether specific particulars should be disclosed or withheld, the court must first look to all of the circumstances of the case and then decide whether proper regard for a defendant's right to make an adequate defense creates a need of the particulars sought. The relative urgency of the defendant's necessity is to be compared with the foreseeable prejudice to the prosecution, if the disclosure be ordered. If the defendant could be substantially prejudiced in his defense by failure to particularize the place where the offense is alleged to have been committed, the disclosure should be made in response to his demand for a bill of particulars (cf. *People* v. *Stedeker*, 175 N. Y. 57, 61), regardless of its impact on the prosecution. I do not perceive how these defendants can be unduly prejudiced by a denial of the particulars as to where the homicide was committed in this case.

If they intend to offer evidence of an alibi, all that is necessary to raise a reasonable doubt — if the People succeed in making out a prima facie case — is evidence of their whereabouts at or about the time when the crime was committed. It is not necessary that they know the precise place of its commission for them to prepare that defense — if it is to be their defense — for it makes no difference where the crime was committed if they were some place else at the time. In a sense, it might be convenient, but it is not necessary, for them to know exactly where

the crime was committed when, individually or collectively, they come to draw upon their recollection of where, and in whose company, one or the other or all of the defendants were when the crime was committed. On the other hand, the possibility of prejudice to the prosecution is substantial and clearly outweighs the convenience of the defendants.

Although I make no direct reference to a factor mentioned by my respected colleague, Justice SOBEL (*People* v. *D'Andrea,* 20 Misc 2d 1070, 1073), and neither dismiss nor suggest the possibility of its future influence in this case, I do not agree that an evil can be eliminated by burying it under a mound of rhetoric. And, obviously, I do not consider my concern for the safety of the witnesses as " vagrant fear ". It has an identifiable and significant source of inspiration and its substance has some degree of empirical confirmation in the record of a fatal mistake which the New York City Police made in attributing the same state of mind to a man named Arnold Schuster (see *Schuster* v. *City of New York,* 5 N Y 2d 75). Further discussion is precluded by the necessities of the case. Whether the end result is within or without the area of proper exercise of the judicial discretion can only be tested by reference to the entire content of the Grand Jury minutes.

In view of this conclusion, defendants' other demands for even more detailed particulars need not be discussed, although they may be mentioned. They would have the District Attorney specify the names and addresses of any persons (other than defendants themselves) present at the time and place of the shooting and stabbing; the names and addresses of any accomplices (other than defendants themselves) in the shooting and stabbing and, in effect, the particular acts relied on to establish each defendant's status as a principal in the commission of the crime. They would also have the District Attorney disclose the identity of the person or persons who placed the body of the deceased in Jamaica Bay and the time and place of that occurrence. On the argument of these motions the counsel conceded that some of the demands " might appear to be a little out of the ordinary ". In the light of the fact that one of them calls upon the District Attorney to specify " the time when and the place where it will be claimed that (the attorney's client) premeditated and deliberated as required by law, to kill  *  *  *  Ernest Rupolo " (the deceased) it would appear that the counsel has achieved something more than an approximation of Benjamin Franklin's mastery of the art of understatement.

In my consideration of defendants' demands for discovery and inspection, it immediately becomes evident that the true purpose

is to find out whether there is anything that might be inspected, and that the secondary purpose is to obtain the inspection if anything open thereto exists. The affidavits submitted in support of the motions do not allege, for example, that the defendants, or any of them, made any written or verbal statements to any law-enforcement officials nor is there any evidence or a concession that, in fact, any such statements were made.

The same is true of defendant Franzese's demand, summarized in my outline of his motion (Motion No. 8, subd. 3-e); defendant Matteo's demand that the District Attorney be required to " (l)ist all items including but not limited to clothing, eye glasses, personal effects, which belonged to or were in the possession of the deceased Ernest Rupolo at the time of his death which are now or have ever been in the possession of the District Attorney " and that he " state whether any of the said articles * * * have been subjected to any tests; if so, set forth what tests were conducted and the article or articles so tested " as well as " whether the District Attorney now has or has ever had in his possession any article or articles which belonged to or were in the possession and control of the defendant Matteo upon which any test or tests were made which the District Attorney intends to use to connect the defendant Matteo with the commission of the crime "; defendant Florio's demand that the District Attorney " (l)ist all clothing, eye glasses, eye covering, and any other article belonging to Ernest Rupolo which are now or have ever been in the possession of the District Attorney " and " were any of the articles set forth (in the foregoing demand) subjected to any tests? If yes, set forth what tests were conducted and name the article or articles tested "; defendant Crabbe's demand that the District Attorney " state whether the District Attorney now has or ever had in his possession any article or articles which belong to or were in the control of defendant * * * upon which any test or tests were made and state further what tests were conducted and name the article or articles belonging to said defendant " and " state whether any article or articles that the District Attorney intends to use as evidence were taken from the home of defendant * * * or elsewhere ".

The supporting affidavit of defendant Florio's counsel states, quite candidly, that " the list of all articles which may constitute real evidence in this case is necessary inasmuch as defendant intends to move for an order permitting him a discovery and inspection of these items " and " information concerning any tests that may have been made of the real evidence herein is

necessary in order to permit defendant to conduct similar tests and prepare his defense."

Plainly, this phase of the motions is " for obviously exploratory purposes " (*People* v. *Miller,* 42 Misc 2d 794, 796, *supra;* see, also, *People* v. *Marshall,* 5 A D 2d 352, 354–355, affd. 6 N Y 2d 823). Its denial on that ground does not, however, include the requests for particulars as to the clothing, contents or anything else found upon or fastened to the body at or after the time of its discovery, so far as evidence of such things appears in the Grand Jury minutes. The requests for those particulars have been denied in the exercise of discretion. In short, I do not tax the defendants with a failure to show what I already know from the Grand Jury minutes. It may be appropriate to remind the District Attorney that, if either he or the police have in their possession evidence which should, in fairness, be disclosed to these defendants, he is subject to whatever penalties may be imposed for suppression (see *Brady* v. *Maryland,* 373 U. S. 83, 84–87; *People* v. *Fein,* 18 N Y 2d 162, 173–174; *United States ex rel. Butler* v. *Maroney,* 319 F. 2d 622, 626–627 [3d Cir.]; *United States ex rel. Meers* v. *Wilkins,* 326 F. 2d 135, 136–138 [2d Cir.]; *Barbee* v. *Warden,* 331 F. 2d 842, 844–846 [4th Cir.]; *Ellis* v. *United States,* 345 F. 2d 961, 962–963 [D. C. Cir.]).

Although the value of the National Reporter System is so well appreciated by the Judges of the Criminal Term that it has been made the sole source from which we derive our knowledge of the opinions of the several courts of our sister States and those of the Federal jurisdiction, we are required, in the rendition of our opinions, to cite New York decisions from the official reports, if any, as the counsel themselves are bound to do in their briefs on appeal (CPLR 5529, subd. [e]). The conversion of citations to unofficial reports should not have to be undertaken by the court, as it was in this case.